Pollock, j.
Francis B. Clutz brought an action in the court of common pleas of Jefferson county against Charles H. Hess, as executor of the estate of John A. Cunningham, to recover on an account which he claims was due him from the estate. The case was tried in the court below, resulting in a verdict and judgment in favor of the plaintiff, and this action is prosecuted to reverse that judgment.
Clutz, the plaintiff below, is a married man, and the fourth item of the account reads:
*58 “For wages due my wife, Crete Clutz, for services performed for John A. Cunningham at his special instance and request.”
All the errors complained of relate to this item of the account, and can be considered under two heads:
1. Could the plaintiff below maintain the action for the amount of the wages due for services performed by his wife ?
2. If he could, is she a competent witness in behalf of the plaintiff below ?
In the fall of 1911 John A. Cunningham and Francis B. Clutz entered into a partnership to conduct a dairy on the farm of Cunningham, who lived in the village of Amsterdam, Jefferson county, the farm being some distance from that village. Cunningham was engaged in the banking business in the village. Just what each of the partners was required to do in furtherance of the partnership business, and how the business was conducted, does not very distinctly appear from the record. Mrs. Clutz is the only witness who testifies in regard to the partnership agreement and the employment of herself, for which her husband is now claiming compensation. This partnership continued until the death of John Cunningham.
Mrs. Clutz testifies that in the fall of 1912 Cunningham was at the dairy, and she and he had a conversation, which she claims to have been as follows:
“We had about 45 cows we were milking at that time. It was more work than I could do; Mr. Cunningham spoke that way, it was more work than I could stand. That he would hire the girl *59 if we would board her, which we agreed to do; if we boarded her, he would pay the wages.”
She testifies that following this conversation Audrey Mason was employed at $3 per week; that she continued in this employment for a number of months; and that when she left a sister of Mr. Clutz was employed at the same amount per week. She testifies as to this-employment as follows:
“They needed a hand and Mr. Cunningham was to pay the wages if we would board her. He said, Ts it satisfactory to you to do the cooking?’ I said, ‘Anything to help along with the work;’ I was willing to do my share.”
The testimony further shows that these two girls during their employment worked in this dairy, milking cows, attending to the milk and such other work as was required about the dairy, and that they did some of the work of the housekeeping at the Clutz home. Mrs. Clutz testified that she, during the time that these girls were employed, worked in the dairy doing the same kind of work as they did.
We refer to this testimony, and the work which these girls did, because of its reflection upon the employment of Mrs. Clutz. After the second girl left, Mrs. Clutz claims that then she was employed to do the work that the- girl had been doing at the dairy. She testifies as follows:
“When Miss Clutz left,- my sister-in-law, he wanted to get another girl. I said, ‘Mr. Cunningham,’—I called him John, if he was satisfied T will work for $3 a week and do her share of the work.’ He said he was willing for me to have the money if I could stand the work. It was satisfac *60 tory to Mr. Cunningham and his mother to have me do that. Of course, Mrs. Cunningham is dead now.”
This is the substance of the testimony in the record in regard to her employment. She testifies that after this arrangement, stated above, she continued until the dissolution of the partnership to do the work that she had been doing and also that which each of the girls had done prior to her employment.
The question now arises, Can the husband recover the wages due from this estate for the services performed under this agreement by his wife ? It is urged that she was working there with her husband, and doing such work as a woman ordinarily would do for her husband, under similar circumstances, in a dairy or on a farm, and we may concede that that is correct. But this was not the dairy of Clutz. The work was performed in the dairy of Cunningham and Clutz. These girls and Mrs. Clutz were employed because the dairy needed additional help apart from that of the husband, and the arrangement between the partners was that Cunningham was to pay the wages and Clutz to board the girls.
Under the common law the husband had the sole right to recover for the services of his wife, but that rule has been changed by the provisions of Sections 7995.to 7999, inclusive, General Code; and under the provisions of these sections the supreme court of this state in the case of Bechtol v. Ewing, Admr., 89 Ohio St., 53, recognized the right of the wife to recover for her services performed under a contract with a third person. It *61 must be conceded that under the principle announced by the supreme court in above case, Mrs. Clutz could have recovered in an action in her own name for these services. The question remains whether she has the sole and only right to recover.
Under the provision of Section 7995, General Code, the husband and wife contract towards each other obligations of mutual respect, fidelity, and support.
The following section provides that the husband is the head of the. family; that he may choose any reasonable place or mode of living, and the wife must conform thereto.
Then by Section 7997 the husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able.
As noted in the opinion in the case of The Baltimore & Ohio Rd. Co. v. Glenn, 66 Ohio St., 395, there is thus far little change in the statute from the common-law rule of the relation of husband and wife.
Then follows Section 7998, which provides that neither husband nor wife has any interest in the property of the other, except as mentioned in the .next preceding section, etc. And the following section provides:
“A husband and wife may enter into any engagement or transaction * * * with any other person, which either might if unmarried.”
The supreme court in the case of The Baltimore & Ohio Rd. Co. v. Glenn, supra, held that the sections just referred to did not abridge or affect the right of the husband to recover against one who *62 wrongfully or negligently injures his wife, for loss of her services and for her necessary medical and other expenses in healing her injuries.
Then the court said in the case of Bechtol v. Ewing, Admr., supra, that the wife could recover compensation for her services rendered outside of the home of her husband, when such services were not in the discharge of her household or domestic duties, and not in interference therewith.
Mrs. Clutz testified that the services she performed in the dairy did interfere with her domestic duties in the home; she says she neglected these duties in order to do the work in the dairy — at least to a certain extent. Prior to her contract with Cunningham Mrs. Clutz was performing, with some assistance from the girl employed, her domestic duties at home, and working the remainder of her time in the dairy with her husband. The only change that was made in the services which she rendered at the dairy after the contract with Cunningham was that in addition to the work which she had been doing previous to that time, she did the work which' the girl had been doing.
In the opinion in the case of Bechtol v. Ewing, Admr., supra, Newman, J., refers to the New York statute in regard to the rights and liabilities of married women as being similar to the Ohio statute.
The court of appeals of New York in the case of Birkbeck v. Ackroyd, 74 N. Y., 356, 30 Am. Rep., 304, in construing the statute, say:
“The provision of the act of 1860, (§2, chap. 90, Laws of 1860), ‘concerning the rights and liabilities of married women,’ which authorizes a married *63 woman ‘to perform any labor or service on her sole and separate account/ does not wholly abrogate the rule of the common law entitling the husband to the services and earnings of the wife; she may still allow him to claim and appropriate the fruits of her labor, and in the absence of an election on her part to labor on her account, or of circumstances showing her intention to avail herself of the privilege conferred by the statute, the husband’s common law right is unaffected.
“Where, therefore, the husband and wife are living together and mutually engaged in providing for the support of themselves and their family, and there is nothing to indicate an intention on the part of the wife to separate her earnings, the husband may maintain an action in his own name to recover them.”
And on page 359 of the opinion it is said:
“The duty still rests upon the husband to maintain and support the wife and their children, and it is not necessary, in order to give the wife the protection intended by the statute to hold that, irrespective of her intention, her earnings, in all cases, belong to her and not to the husband, and the language of the act does not admit of this interpretation.”
.Again, in the case of Porter v. Dunn, 131 N. Y., 314, 30 N. E. Rep., 122, this court announces the same principle in construing this statute.
The mere fact that the wife performs some service under a contract with a third person, by which he was to pay therefor, does not necessarily imply that the compensation was her own separate property, but she can devote her time and services *64 while so employed to her husband, and allow him to receive the benefit of her labor.
If the labor is performed in the furtherance of the business in which the husband is engaged, and they are mutually engaged in laboring for their common benefit, the statute does not deprive the husband of his common-law right to recover for the services of his wife, when she does not elect to avail herself of her right under the statute, but assists her husband in collecting the fruits of her services. If she acquiesces and assists her husband in his effort to recover the value of her services rendered in advancing the enterprise in which he is engaged, the debtor can not defend on the ground that the husband can not maintain the action.
Mrs. Clutz, both before and after this contract with Cunningham, was doing work in this dairy in connection with her household duties. She was working along with her husband and advancing the business in which he was engaged. There is no indication that she ever asserted or intended to assert any right to the benefit of these services as her separate property; the exact opposite appears from the record. She is here testifying in behalf of her husband, both to the contract and to the services rendered.
We think that, notwithstanding the work for which recovery is sought was performed under a contract made by Mrs. Clutz with Cunningham, the husband is not deprived by the statute of his common-law right to recover the compensation due for the services of his wife.
The remaining question is, Was the wife a competent witness on behalf of the plaintiff below? *65 Section 11495, General Code, provides a party shall not testify where the adverse party is an executor, etc., except as to facts which occurred after the appointment of the executor.
Mrs. Clutz was not a party to this action, and does not come under the direct provisions of this section. If she is prohibited from testifying on behalf of her husband it is under the following provision contained in the section:
“When a case is plainly within the reason and spirit of the next three preceding sections, though not within the strict letter, their principles shall be applied.”
The only question is, Does she come within the reason and spirit of the section? If the husband could maintain this suit under his common-law right for the services of his wife, she was not a necessary party, and he would not claim through any assignment or transfer from her to him, but through his own legal right to maintain the action under the circumstances already stated.
As was announced in the opinion in the case of Ryan v. O’Connor, 41 Ohio St., 368, 372:
“He was, therefore, not a necessary party to the action, and the reason and spirit of the statute which excludes the testimony of a party when the adverse party claims or defends as heir of a deceased person, should not apply so as to exclude his testimony.1”
A somewhat similar question was passed upon by-our supreme court in the case of Shaub v. Smith et al., 50 Ohio St., 648. And the court of appeals of New York, in construing their statute in a like *66 case, held in Porter v. Dunn, supra, that the wife was a competent witness.
Under these authorities we think the objection to the wife "of Clutz testifying was not tenable.
The judgment of the -court below is affirmed.

Judgment affirmed.

Metcalfe and Farr, JJ., concur.