**FISCHER et al., Appellees,**

v.

**DAIRY MART CONVENIENCE STORES, INC. et al., Appellants.**

[Cite as *Fischer v. Dairy Mart Convenience*
*Stores, Inc.* (1991), 77 Ohio App.3d 543.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 60543, 60548 and 61054.

Decided Oct. 2, 1991.

546

*Reid, Berry & Stanard* and *Margaret Kazdin Stanard,* for appellees.

*McNeal, Schick, Archibald & Biro Co., L.P.A.,* and *Thomas P. O'Donnell,* for appellant Dairy Mart Convenience Stores, Inc.

*Thomas F. Spinks,* for appellant James Allen, d.b.a. Dairy Mart.

ANN MCMANAMON, Judge.

In two consolidated appeals, defendants Dairy Mart Convenience Stores, Inc. ("the corporation") and James Allen, d.b.a. Dairy Mart ("the franchisee")

challenge a jury award of $805,000 to plaintiffs Edward and Judith Fischer. In a third consolidated appeal, the Fischers separately contest summary denial of their motion for prejudgment interest by the trial court.

The Fischers brought a negligence action against the defendants after Edward Fischer sustained permanent back injuries which purportedly occurred in the scope of his employment as a garbage hauler for Waste Management, Inc. The jury determined Fischer's claims did result from his fall into a manhole, obscured by snow, on the property of a Dairy Mart convenience store. The business was operated on West 14th Street in Cleveland by the franchisee.

The corporation's eleven assignments of error[1] and the franchisee's six assigned errors[2] controvert the court's rulings on motions during and after trial, as well as evidentiary determinations and instructions to the jury. Questions as to the sufficiency and weight of the evidence sustaining the negligence award are also raised.

Our review compels affirmance.

## I

On April 1, 1987, Edward Fischer fell into an open, waist-deep manhole which was rendered invisible by an accumulation of twelve to seventeen inches of heavy, wet snow on the store property. The accident occurred as Fischer attempted to show a store employee that the snow prevented his attempt to maneuver his truck close enough to a dumpster in the rear parking lot.

It is undisputed that Fischer's fall caused injuries to his back, neck, leg and shoulder. The defendants, however, reject Fischer's claim of a herniated disc, which they maintain resulted from a lifting accident two years after his fall in 1989. The defendants also cite a June 1987 truck fire incident to show that his back problems did not originate with his fall in April 1987. Fischer and his doctors counter that, although the herniated thoracic disc, leg numbness and bowel/bladder incontinency were precipitated by the 1989 accident, the accident resulted from the weakened and degenerative spinal condition caused by the April 1987 fall. The jury accepted the plaintiffs' position.

The jury also determined that the corporation and franchisee negligently failed to discover and repair the uncovered manhole. The defendants unsuccessfully sought to prove that the franchisee was unaware the manhole was

---

**1.** See Appendix A.

**2.** See Appendix B.

uncovered and that the corporation had no contractual duty to remedy such a hazard absent notification from the franchisee.

In support of the verdict, the plaintiffs' evidence showed: (1) the corporation had replaced a missing cover from the manhole two months before the franchisee took control of the store in February 1987; (2) though claiming never to have noticed the open hole, the franchisee conceded his employee periodically worked and plowed snow in the vicinity of the hole; (3) Fischer's supervisor at Waste Management testified that the manhole lacked a permanent cover from August 1986 until the April 1987 accident; (4) a Waste Management employee averred that, in January 1987, the hole was covered temporarily with a candy rack; and (5) photographs taken at the time of the accident show piled snow with squared corners on the round manhole opening.

The jury awarded Edward Fischer $491,250 against the corporation and $163,750 against the franchisee. It also awarded Judith Fischer $112,500 and $37,500 judgments against the corporation and franchisee, respectively. The court subsequently denied defense motions for directed verdict, judgment notwithstanding the verdict and for a new trial. The court also summarily denied the plaintiffs' motion for an award of prejudgment interest.

## II

The franchisee's first assignment of error and the corporation's first, ninth and tenth assigned errors each contest the denial of their motions for a directed verdict, judgment notwithstanding the verdict and a new trial. To facilitate our review, we will consolidate these issues.

In support of their motions, the defendants argue that the plaintiffs: (1) offered insufficient evidence that defendants had notice of the hazardous condition of the manhole; (2) failed to prove the defendants had a duty to inspect the premises; (3) did not demonstrate the corporation possessed and controlled the premises; (4) failed to establish that defendants' negligence proximately caused the injuries; and (5) made improper comments during closing arguments prejudicially emphasizing the franchisee's corporate identity.

Civ.R. 50 motions for a directed verdict and for judgment notwithstanding the verdict are governed by the same legal standard. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19; *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 532 N.E.2d 162; *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333. A reviewing court must construe the evidence adduced at trial and all reasonable inferences arising therefrom, most strongly in favor of the non-moving party, in addition to assuming the truth of all evidence in support of that party's

claims. *Osler, supra; Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467; *Cardinal, supra; Shore, supra.* As such motions question only the legal sufficiency of the evidence to carry a case to the jury, this court is prohibited from considering the weight of the evidence and the credibility of witnesses. *Osler, supra; Ruta, supra; Cardinal, supra; Shore, supra.* Where there is some evidence of substantial probative value in support of the plaintiffs' claim sufficient for reasonable minds to reach different conclusions, the trial court must deny the motions for directed verdict and judgment notwithstanding the verdict. *Id.; Strother, supra.*

 To establish a negligence claim sufficient to reach a jury, the plaintiffs must put forth evidence tending to show the existence of a duty, and a breach of that duty, which proximately causes the injuries complained of. *Strother, supra.* Issues in a negligence action should not be withdrawn from the jury where, as here, factual issues exist as to the conduct of the parties as well as the applicable standard of care. *Id.*

 The franchisee, as proprietor of the convenience store, owed a duty to its conceded business invitee, Edward Fischer, to use ordinary and reasonable care for his safety. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 65 O.O.2d 129, 303 N.E.2d 81; *Perry v. Eastgreen Realty Co.* (1977), 55 Ohio App.2d 130, 9 O.O.3d 277, 379 N.E.2d 599. While the franchisee is not an insurer against all possible accidents and injuries, it must maintain the premises in a reasonably safe condition. *Perry, supra.*

 As a properly covered manhole presents no unreasonable hazard, even if covered by a natural accumulation of snow, the plaintiff must show the franchisee and corporation had actual or constructive notice that the snow concealed an uncovered manhole in the surface of the store parking area. *Presley, supra; Renneckar v. Canton Terminal Restaurant* (1947), 148 Ohio St. 119, 35 O.O. 98, 73 N.E.2d 498. As the invitee is not expected to protect himself from such an unforeseen danger, the defendants' failure to remedy a known hazardous condition constitutes actionable negligence. *Presley, supra; Mikula v. Slavin Tailors* (1970), 24 Ohio St.2d 48, 53 O.O.2d 40, 263 N.E.2d 316.

The plaintiffs provided compelling evidence that employees of the franchisee routinely traversed the back parking area around the manhole in the course of their ordinary business activities.

"A deep hole in a parking lot which is filled or covered, or both, by a natural accumulation of snow constitutes a condition, the existence of which the

owner of the premises is bound, in the exercise of reasonable care, to know. He is also bound to know that a natural accumulation of snow which fills or covers the hole is a condition substantially more dangerous than that normally associated with snow." *Mikula, supra,* at 57, 53 O.O.2d at 45, 263 N.E.2d at 322.

Thus, we find the evidence suggests the franchisee knew, at least constructively, of the dangerous condition existing on its property.

It was the corporation which assumed responsibility for the repair of any such defective condition, upon notice from the franchisee, pursuant to the franchise agreement. The record is devoid of evidence disclosing such notification. Nonetheless, as we previously noted, the plaintiffs presented documentary and testimonial evidence to indicate that the corporation knew the manhole cover was missing even before the franchisee took possession in January 1989. A corporation witness disclosed that the corporation had, in fact, advised the franchisee to cover the hole in the past with temporary items, including a milk crate and candy rack. A Waste Management witness confirmed that the franchisee followed this directive.

Having thus established a jury issue as to the breach of defendants' duty to keep the parking area reasonably safe, the plaintiffs must also show that the plaintiff's injuries were proximately caused by the breach. *Strother, supra.* While not disputing the existence of the plaintiff's injuries, the defendants claim that it was a later lifting accident, and not the fall in this case, which caused Fischer's herniated disc and related problems. The plaintiffs, however, presented the testimonial and documentary evidence of three of Fischer's personal physicians in support of their contention that the April fall so weakened Fischer's spine that, two years later, his legs buckled on the job and precipitated the herniation of an already damaged disc.

" ' * * * [W]here an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability.' " *Strother, supra,* 67 Ohio St.2d at 287, 21 O.O.3d at 180, 423 N.E.2d at 471, quoting *Clinger v. Duncan* (1957), 166 Ohio St. 216, 2 O.O.2d 31, 141 N.E.2d 156.

We find the evidence suggests it was reasonably foreseeable that a garbage hauler with a damaged spine might subsequently injure himself while doing the kind of lifting associated with his employment.

Construing the evidence most strongly in favor of the plaintiffs, we find proof of each element of negligence sufficient to survive motions for directed

verdict and judgment notwithstanding the verdict, thus leaving to the jury the determination of the defendants' negligence. *Strother, supra.*

■■■ Unlike the preceding motions, in ruling on a Civ.R. 50 motion for a new trial, the court has broad discretion in determining whether a jury verdict is against the manifest weight of the evidence. *Osler, supra; Ruta, supra; Blair v. Property Mgmt. Consultants* (1987), 40 Ohio App.3d 103, 531 N.E.2d 752; *Jones v. Meinking* (1987), 40 Ohio App.3d 45, 531 N.E.2d 728. A reviewing court must view the evidence most favorably to the trial court's action as opposed to the verdict of the jury. *Osler, supra; Jones, supra.*

■■■ An appellate court will not substitute its judgment for that of the jury when there is credible and competent evidence supporting the fact finder's determination. *Season's Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *North Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 16 OBR 391, 476 N.E.2d 388. Further, so long as a judgment is supported by some evidence going to all the requisite elements of a cause, it will not be reversed as being against the manifest weight of the evidence. *Season's Coal Co., supra; C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. As already noted, because the plaintiffs presented evidence going to each element of their negligence claim, we cannot find the judgment to be against the manifest weight of the evidence. Thus we hold the trial court properly denied the defendants' motions for a new trial.

■■■ We finally note that the corporation's contention that the size of the jury award was influenced by plaintiffs' closing argument, in which counsel discussed the corporate identity of the franchisee, has no place in determining the propriety of the denial for the Civ.R. 50 motions. Such determinations rely exclusively upon the evidentiary content of the record and not upon the non-evidentiary commentary of counsel. The record contains ample evidence of plaintiff's permanent pain and suffering to justify the award. Cf. *Jones, supra.* In addition, we note that counsel has great latitude in presenting a closing argument. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313. Thus, references to an uncontroverted fact, such as the corporate status of the franchisee, is permissible and not prejudicial. *Id.*

The franchisee's first and the corporation's first, ninth and tenth assigned error are not well taken.

### III

The franchisee's third and the corporation's eleventh assignments of error both charge the findings of negligence and loss of consortium were against the manifest weight of the evidence.

As we noted in our discussion in the previous section, we will not reverse the negligence finding as against the weight of the evidence because the record reveals ample evidence going to all of the requisite elements of the claim. *Season's Coal Co., supra; C.E. Morris Co., supra.* We also reiterate our affirmance of the damage award, which is supported by evidence of the plaintiff's permanent disability, pain and suffering. Cf. *Jones, supra.*

We also decline to reverse the loss of consortium verdict in favor of Judith Fischer. A wife is entitled to compensation for the loss of the services/consortium of her husband as a result of a negligence injury. *Clouston v. Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St.2d 65, 51 O.O.2d 96, 258 N.E.2d 230; *Hughes v. Schulty* (1988), 43 Ohio App.3d 139, 539 N.E.2d 1158. See, also, *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 540 N.E.2d 716. This cause of action is defined as the loss of " * * * certain tangible and intangible benefits which arise out of the marital relationship itself." *Hughes, supra,* 43 Ohio App.3d at 140, 539 N.E.2d at 272; *Clouston, supra.* The compensable losses may include, but are not limited to: society, services, sexual relationship, companionship, and conjugal affections. *Hughes, supra.* The husband's service in the wife's business is considered such a compensable loss, provided the husband does not also seek compensation for the same loss. *Id.*

The record contains overwhelming evidence that the Fischers' home life was substantially affected by the husband's debilitating back injury. The restricted mobility of his neck, back and shoulders, the numbness in his legs and his bladder control problems prohibited the husband from active involvement in the household and, in fact, placed a significant burden upon his wife. Additionally, Edward Fischer is now unable to assist his wife and sister-in-law in their floral business. In light of the competent and credible evidence supporting the loss of consortium verdict, we will not substitute our judgment for that of the fact finder. *Season's Coal Co., supra; North Coast Cookies, Inc., supra.*

The franchisee's third and the corporation's eleventh assignments of error fail.

IV

In their second assignments of error, both defendants cite the court's failure to exclude expert medical testimony seeking to prove Fischer's fall into the manhole proximately caused his herniated disc and related problems. The defendants contend: (1) the plaintiffs improperly failed to supplement their discovery responses with the identification of the expert witnesses and the subject of their testimony, in contravention of Civ.R.

26(E)(1)(b) and Loc.R. 21.1; and (2) the medical expert testimony regarding proximate cause did not rise to the degree of certainty required for presentation to the jury.

Civ.R. 26(E)(1)(b) requires, upon request, the supplementation of discovery responses to disclose the identity of each expert witness to be called at trial, as well as the subject matter about which he will testify. Loc.R. 21.1 mandates that the party calling the expert witness must first submit the expert's written report.

Upon agreement of the parties, the plaintiffs presented the videotaped deposition testimony of four medical doctors at trial. All testimony objected to by the defendants was excised from the tapes before they were shown to the jury. The doctors (a urologist, neurologist, orthopedic surgeon and internist) treated Edward Fischer for conditions resulting from his back injury. Treating physicians, such as these, are called at trial to testify as viewers of the patient's physical condition and not as experts retained in anticipation of litigation. *Covington v. Sawyer* (1983), 9 Ohio App.3d 40, 9 OBR 43, 458 N.E.2d 465. Thus the Civ.R. 26 and Loc.R. 21.1 mandates regarding expert testimony are not applicable to these ordinary witnesses. *Covington, supra.*

For the same reason, the defendants' second argument also fails. The doctors each explained to the jury the treatments and diagnoses they provided to Edward Fischer. They all agreed that Fischer consistently indicated he first injured his back in the April 1987 fall. Such information is admissible pursuant to Evid.R. 803(4) as it is reasonably important to an accurate diagnosis. *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 20 OBR 44, 484 N.E.2d 712. A review of office records and notes, admissible under Evid.R. 803(6), disclosed that by 1989 Fischer was experiencing symptoms consistent with a herniated disc. *McQueen, supra.* One doctor opined that the April 1987 trauma so weakened Fischer's spine that his subsequent accident herniated the disc. Another concurred that such a possibility existed. The urologist believed the bladder problems stemmed from Fischer's back injuries, but had no opinion as to their origin. Finally, the orthopedic surgeon stated the April fall caused injury to Fischer's back.

Such opinion testimony is admissible, pursuant to Evid.R. 701, where it is " * * * (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

The doctors confined their testimony to their observations of the physical condition of Fischer at various times in the course of his treatment. These opinions were rationally based on their own perceptions and were helpful to the determination of whether or not the fall proximately caused Fischer's

injuries. As such, the opinions were admissible pursuant to Evid.R. 701. *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 12 OBR 190, 465 N.E.2d 1326. Cf. *Hatfield v. Andermatt* (1988), 54 Ohio App.3d 188, 561 N.E.2d 1023.

We also note that, pursuant to Evid.R. 704, such testimony "* * * in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

Where, as here, the doctors discussed at length the rationale in support of their opinions, such testimony is admissible. *Gannett, supra.*

The defendants' second assignments of error are not well taken.

V

The corporation's third assigned error challenges the admission of the lay opinion testimony of a Waste Management supervisor.

The witness was Fischer's immediate supervisor at the time of the accident. It was his testimony that he wrote a report, dated two days after the accident, in which he described Fischer's fall. This report was prepared in accordance with routine company procedure. The supervisor quoted the following statement from the report: "This manhole has not had a cover for sometime." According to documentation, Waste Management had advised the corporation in August 1986 that the manhole lacked a cover. At the scene, after the accident, the supervisor noted that the hole was uncovered. When the supervisor wrote his report, he based his statement upon his perception that the cover had been missing from August 1986 until the April 1, 1987 accident.

We need not address the admissibility of the supervisor's statements as lay opinion testimony as the report from which he derived his testimony was admissible, pursuant to Evid.R. 803(6), as a record "of regularly conducted activity." The rule permits use of:

"A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness * * *."

Where, as here, there is no demonstration that the court abused its discretion in admitting the business report, we will not overturn the trial court's determination on appeal. *Cleveland v. Huff* (1984), 14 Ohio App.3d

207, 14 OBR 235, 470 N.E.2d 934; *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 2 OBR 57, 440 N.E.2d 590.

This assignment of error fails.

## VI

The franchisee's fourth and fifth assigned errors and the corporation's fourth, fifth, seventh and eighth assignments of error take issue with the court's instructions to the jury on the subjects of: (1) the extent of the defendants' duty of care, and (2) the question of contributory/comparative negligence.

██ Jury charges must be reviewed in the context of the entire instruction. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus, certiorari denied (1980), 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798. See, also, *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792; *Schade v. Carnegie Body Shop* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001.

██ In reviewing the entire instruction, we find the court properly charged the jury on the issues of: ordinary and reasonable care, foreseeability, proximate cause, the definition of "business invitee," possession and control, consideration of the agreement between the parties, and the duty of each defendant regarding a hidden defect. The substance of the charges comports with the applicable law as set forth in this opinion, *infra*, and in 1 Ohio Jury Instructions (1991), Sections 7, 9 and 13. We note that where, as here, a trial court exercises its discretion to tailor the language of its instructions to better suit the factual circumstances in the case before it, we will not reverse that determination absent an abuse of discretion. *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 7 OBR 124, 454 N.E.2d 541.

██ We also find no abuse of discretion in the court's failure to instruct the jury on comparative/contributory negligence. The record discloses no evidence which raises the issue and the plaintiff's own testimony reveals he saw no hazard beneath the snow as he walked. Thus, the court properly refrained from instructing the jury on an issue not factually supported by evidence at trial. *Schade, supra; Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135, paragraph two of the syllabus.

The franchisee's fourth and fifth assigned errors and the corporation's fourth, fifth, seventh and eighth assignments of error fail.

## VII

In their sixth assignments of error, the defendants each take issue with the court's failure to submit their interrogatories to the jury in contravention of Civ.R. 49(B).

Civ.R. 49(B) mandates:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. * * * "

The court, however, retains discretion to review the content and appropriateness of interrogatories proposed by the parties. *Cincinnati Riverfront Coliseum v. McNulty* (1986), 28 Ohio St.3d 333, 28 OBR 400, 504 N.E.2d 415; *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645. The trial court is not " * * * a mere conduit who must submit all interrogatories counsel may purpose." *Ragone, supra,* at 165, 71 O.O.2d at 166, 327 N.E.2d at 649. Where the questions are not based on the evidence or " * * * are incomplete, ambiguous or otherwise legally objectionable * * *," the court may deny their submission to the jury. *Id.* at 165–166, 71 O.O.2d at 166, 327 N.E.2d at 649. Interrogatories are required to elicit only specific findings on particular questions of fact which will tend to test the correctness of the general verdict and thus aid the court in its determination as to whether the verdict should stand. *Ragone, supra.* Such questions must relate to determinative issues which are " ' * * * those issue[s] the deciding of which by the jury may in and of [themselves] dispose of the entire case.' " *Vaughn v. Natl. RR. Passenger Corp.* (Sept. 13, 1990), Cuyahoga App. No. 57315, unreported, at 9, 1990 WL 130917, quoting Staff Note to Civ.R. 49(B).

The proposed interrogatories sought the following information: (1) how long the manhole cover was missing, (2) whether the defendants had notice of the situations, and (3) whether the defendants were negligent.

Instead of submitting the proposed interrogatories, the court crafted nine verdict forms for the jury which delineated the jury's options in determining the responsibilities of the parties.

While the content of the proposed interrogatories was not objectionable, we find the court essentially achieved the same purpose with the multiple verdict forms. We also note that the interrogatories addressed only the issue of notice and omitted reference to such determinative factual issues as duty, breach and proximate cause. Instead, the remaining interrogatories asked for legal conclusions as to proximate cause and negligence. The submission of questions limited to the factual issue of notice inadequately defined the jury's

task and was not determinative of all the issues in the case. Such formulations could mislead the jury into believing that their resolution of the notice issue alone was dispositive of the case. *Joseph v. Ohio Power Co.* (1988), 46 Ohio App.3d 170, 546 N.E.2d 970. See *Vaughn, supra.* A court's refusal to submit redundant, cumulative, incomplete or ambiguous interrogatories to the jury is not an abuse of discretion. *Ragone, supra; Riley, supra; Sullivan v. Syed* (Aug. 27, 1987), Cuyahoga App. No. 52404, unreported, 1987 WL 16187.

Where, as here, the court properly instructed the jury as to the issues to be resolved and the jury returned general verdicts for the plaintiffs, which are supported by the evidence adduced at trial, the inference is that the determination is correct and thus the defendants suffer no prejudice by the lack of jury interrogatories. See *Englewood v. Wagoner* (1987), 41 Ohio App.3d 324, 535 N.E.2d 736; *Fisher v. Univ. Suburban Real Estate, Ltd.* (Feb. 1, 1990), Cuyahoga App. No. 56529, unreported, 1990 WL 7016.

The defendants' sixth assigned error fails.

## VIII

The plaintiffs' sole assignment of error controverts the denial of their motion for prejudgment interest without a hearing.

R.C. 1343.03(C) sets forth:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The trial court, in its discretion, may elect to hold a non-oral hearing on a motion for prejudgment interest, which is supported by documentary evidence and affidavits, to satisfy the R.C. 1343.03(C) requirement. *Laverick v. Children's Hosp. Med. Ctr. of Akron* (1988), 43 Ohio App.3d 201, 540 N.E.2d 305; *Bitzer v. Lincoln Elec. Co.* (1990), 67 Ohio App.3d 53, 583 N.E.2d 978. We point out that the Ohio Supreme Court cases cited by the plaintiffs do not limit R.C. 1343.03(C) hearings to oral proceedings. Cf. *Cotterman v. Cleveland Elec. Illum. Co.* (1987), 34 Ohio St.3d 48, 517 N.E.2d 536; *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918.

Upon review of the evidence and memorandum in support of the motion for prejudgment interest, we find the court did not abuse its discretion

in denying it. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464; *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572; *Huffman v. Hair Surgeon* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. A party has not exhibited a lack of good faith, pursuant to R.C. 1343.03(C), where it has cooperated in the discovery process, reasonably weighed its potential liability, created no unreasonable delays, and made a good faith effort to settle. *Villella, supra; Kalain, supra; Mills v. Dayton* (1985), 21 Ohio App.3d 208, 21 OBR 222, 486 N.E.2d 1209.

The plaintiffs claim they are entitled to prejudgment interest because the corporation acted in bad faith by making a settlement offer which the plaintiffs considered to be too little, too late. In this case, however, a genuine issue existed as to whether the fall on Dairy Mart property caused Fischer's injuries. Where a party reasonably believes he is not liable, it is not obliged to put forth a settlement offer. *Villella, supra; Highfield v. Liberty Christian Academy* (1987), 34 Ohio App.3d 311, 518 N.E.2d 592. Under these circumstances, the trial court properly declined to award prejudgment interest. *Id.*

The plaintiffs' sole assignment of error fails.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BLACKMON, J., concurs.

KRUPANSKY, C.J., concurs in prejudgment interest and otherwise dissents.

APPENDIX A

Assignments of error of defendant Dairy Mart Convenience Stores, Inc.

I

"The trial court erred by denying the motions for directed verdict of defendant, DMCS."

II

"The trial court erred by not excluding expert medical testimony regarding the proximate cause of the herniated disc suffered by plaintiff on April 24, 1989."

## III

"The trial court erred by not excluding the lay opinion of witness Gerard Crawford contrary to Evidence Rule 701."

## IV

"The trial court erred by submitting conflicting, and erroneous instructions to the jury."

## V

"The trial court erred by refusing to instruct the jury on the issue of plaintiff's contributory negligence."

## VI

"The trial court erred to the prejudice of DMCS when it failed to submit interrogatories to the jury contrary to Civ.R. 49."

## VII

"The trial court erred to the prejudice of DMCS by failing to instruct the jury that DMCS had no duty to remove a natural accumulation of ice and snow."

## VIII

"The trial court erred to the prejudice of DMCS by improperly instructing the jury that the DMCS has a duty to inform Allen of the existence of any hidden defect or danger."

## IX

"The trial court erred to the prejudice of DMCS by denying its motion for judgment notwithstanding the verdict/new trial where the conduct and comments of counsel for plaintiff in closing argument incited the passion and prejudice of the jury resulting in an excessive verdict."

## X

"The trial court erred by denying DMCS's motion for judgment notwithstanding the verdict or in the alternative, motion for new trial where there was sufficient evidence as a matter of law to support the verdict."

### XI

"The judgment of the trial court should be reversed as it is against the manifest weight of the evidence."

### APPENDIX B

Assignments of error of James Allen, d.b.a. Dairy Mart.

### I

"The trial court erred to the prejudice of this defendant-appellant in denying his motions for directed verdict made at the close of the plaintiff's evidence and at the close of all the evidence and in denying his motion for judgment notwithstanding the verdict."

### II

"The trial court committed reversible error in failing to exclude the plaintiffs-appellees' medical experts' opinion testimony concerning the proximate causation of Fischer's herniated disc to the accident involved in this case."

### III

"The judgment of the trial court should be reversed as against the manifest weight of the evidence both as to liability and as to the amount of the damages."

### IV

"The trial court erred to the prejudice of the defendant-appellant in incorrectly charging the jury concerning the extent of this defendant-appellant's obligation to use reasonable care under the circumstances of this case."

### V

"The trial court erred to the prejudice of this defendant-appellant in failing to charge the jury as to plaintiffs-appellees' negligence and the comparative negligence statute."

### VI

"The trial court erred to the prejudice of this defendant-appellant in failing to submit this defendant-appellant's requested interrogatories to the jury."