### Monroe v. Dept. of Rehabilitation and Correction
### Case No. 89AP842
### Franklin County, (10th)
### Decided February 27, 1990
[Cite as 1 AOA 418]

*Sternberg, Newman & Associates, and Mr. Richard Sternberg, for appellant.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, and Mr. Michael W. Gleespen, for appellee.*

McCORMAC, J.

Plaintiff-appellant, Ronald Monroe, appeals from the judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction, and raises the following assignments of error:

"1. The trial court erred in overruling the plaintiff's written and filed motion for new trial and failing to address the issue raised therein that plaintiff's claim for relief was filed and tried as a negligence action against the Department of Corrections and not as a malpractice action as asserted in the court's opinion.

"2. The trial court erred to the prejudice of the plaintiff by failing to apply the applicable law that the Department of Correction owes an affirmative and fiduciary duty to a prisoner-patient known to have uncontrolled seizures to insure that no harm comes to him from failing to provide a safe and secure place while he is

in the Department's custody and under its control."

In April 1986, plaintiff was placed in defendant's custody and was eventually incarcerated at the Orient Correctional Institution. Upon arrival in the custody of defendant, plaintiff reported that he had a twenty-year history of epileptic seizures which had been controlled through a combination of Dilantin and Phenobarbital drug therapies. Furthermore, plaintiff related a history of alcohol and drug abuse, which affected the ability of this drug regime to control his seizures.

Based upon plaintiff's history and a generalized belief that a single drug is more effective than a combination of medications in the control of seizures, defendant's contract physicians ordered plaintiff to be placed on Dilantin alone. An increase in the frequency of plaintiff's seizures ensued which prompted the treating physician to order a C.A.T. scan and an EEG performed. Both tests were normal and failed to discover the cause of plaintiff's seizures. Ultimately, plaintiff's medication was changed from Dilantin to Valproic Acid.

Plaintiff continued to complain that the new drug did not work and demanded, occasionally with some belligerence, that he be placed back on a schedule on Dilantin and Phenobarbital. The treating neurologist, firm in his belief that monotherapy was the best method, refused plaintiff's demands. For the next two months, plaintiff became increasingly uncooperative in his attitude with defendant's contract neurologist. At times, plaintiff would refuse his medication or additional testing and occasionally he would wage hunger strikes. On September 7, 1986, plaintiff again suffered a seizure which was witnessed by a prison guard.

Thereafter, plaintiff was admitted to Frazier Health Center, the institution's clinic, for observation and treatment with orders to exercise seizure precautions. Plaintiff testified that the locked cell he was kept in while at Frazier had no bed but only a mattress on the floor, was dirty, and was in a general state of disrepair. This testimony was corroborated by Robert Fine, a social worker at Orient, and by Susan Dunn, the Orient Inspector of Institutional Services.

On September 17, ten days after his admission, plaintiff had another seizure and fell to the floor striking his eye on a foreign object. Plaintiff testified that he was exiting the bathroom at the time his seizure began and, when he regained consciousness, he was lying just below a metal plumbing inspection plate which had been bent outward exposing a sharp edge. Defendant introduced evidence suggesting that plaintiff told clinic officials that he hit his eye on a corner of the bed. Plaintiff introduced contrary testimony in support of his allegation. The following day, plaintiff was transported to Grant Hospital where his injury was diagnosed as a conjunctiva laceration with a corneal abrasion. Plaintiff's injury failed to respond to treatment and eventually resulted in the removal of his left eye and the implantation of a prosthesis.

Following his release from custody, plaintiff instituted this negligence action in the Court of Claims. The case was tried to the court, after which judgment was entered for defendant.

By his first assignment of error, plaintiff contends that the trial court erred by overruling his motion for new trial. Plaintiff argues that the trial court erred as a matter of law in mischaracterizing his action as one of medical malpractice and that the court's decision was against the manifest weight of the evidence.

Generally, a new trial may be granted for errors grounded in law or fact. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82. A new trial granted on sufficiency of the evidence grounds represents an issue of fact. Under these circumstances, the trial court is vested with broad discretion since the trial court must review the evidence and itself pass upon the credibility of the witnesses. Therefore, the trial court is in the best position to decide an issue of fact. For this reason, a trial court's decision to overrule a motion for new trial on a factual basis will only be overturned on a showing of abuse of discretion. *Rohde, supra; Jones* v. *Meinking* (1987), 40 Ohio App. 3d 45. That is, the party claiming error must demonstrate that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217.

Applying this standard to the trial court's decision on the medical malpractice issue, we conclude that the court's ultimate decision was supported by the evidence and, hence, reasonable. The Court of Claims concluded that plaintiff had failed to introduce expert medical testimony establishing that defendant's treatment of plaintiff's seizure disorder fell below the accepted standard of care. Expert medical testimony is essential to a finding of medical malpractice. *Hubach* v. *Cole* (1938), 133

Ohio St. 137. Plaintiff's own expert concluded that he would have treated the patient differently but that the change from a combination drug therapy to a single drug plan was accepted by the medical community as an appropriate course of treatment. Defendant's expert testified extensively that the current literature was replete with evidence that a single drug treatment produced better control with fewer side effects than a combination drug therapy. Plaintiff has failed to show that defendant's medical treatment of his seizures fell below the accepted medical standard of care. Therefore, the trial court's decision on the medical malpractice issue was not an abuse of discretion.

Plaintiff next argues that the trial court erred as a matter of law in construing his claim as sounding in medical malpractice alone. When dealing with an issue of law, the abuse of discretion standard is inapplicable. As the Supreme Court has stated:

"* * * [W]here a specific action, ruling or order of the court is required as a matter of law, involving no discretion, the test of 'abuse of discretion' should have no application." *Rohde, supra*, at 89.

In this case, the complaining party must show that the court's action was legally wrong. An appellate court will reverse the trial court's order only when the challenged conduct amounts to prejudicial error as a matter of law. *Sanders* v. *Mt. Sinai Hospital* (1985), 21 Ohio App. 3d 249.

Plaintiff assigns no specific action, conduct or ruling during the course of trial as error. Rather, plaintiff contends that the ultimate judgment was based upon an issue not presented at trial, and that the trial court failed to address the primary issue. Plaintiff argues that his cause of action clearly sounded in simple negligence and not medical malpractice. We do not believe that plaintiff's characterization of this action is nearly so cut and dry. His complaint could be read to present claim under either theory. Furthermore, much of the testimony elicited by plaintiff was directed at the appropriate medical standard of care. However, as will be discussed under the second assignment of error, a fair reading of the pleading does indicate that plaintiff did state a cause of action in ordinary negligence. We, therefore, conclude that the trial court erred by not addressing this issue in its judgment.

Civ. R. 59(A) provides that:

"On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."

Since the case was tried to the court, the court may, at its discretion, take the appropriate course of action among those listed above to rectify its failure to address the issues raised by plaintiff's claim of negligence.

Plaintiff's first assignment of error is sustained.

Plaintiff secondly contends that the trial court erred by failing to recognize the common-law duty of defendant to provide a safe and secure place to plaintiff while he was in defendant's custody. Specifically, plaintiff argues that, because the trial court characterized this as a medical malpractice action only, the issue of common-law negligence was never addressed.

In order to prevail on a theory of ordinary negligence, plaintiff must prove that: defendant owed him a duty; defendant breached the duty owed; and plaintiff's damages were proximately caused by defendant's breach. Duty is defined as the existence of ordinary care necessary to reasonably guard against a foreseeable risk to plaintiff. This court held in *McCoy* v. *Engle* (1987), 42 Ohio App. 3d 204, that:

"In the context of the custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks. * * *"

A determination of what degree of care defendant owed to plaintiff in the instant action must center on the foreseeability of plaintiff's injuries. *Jeffers* v. *Olexo* (1989), 43 Ohio St. 3d 140. The extent of the duty will also vary with the circumstances. *Clemets* v. *Heston* (1985), 20 Ohio App. 3d 132.

It is undisputed that plaintiff was a prisoner in the custody of defendant at all times pertinent to this action. There was also evidence introduced showing that plaintiff was prone to and, in fact, did experience seizures while in the custody of defendant. Plaintiff was admitted to Frazier Health Center after a prison

official witnessed him overcome by a seizure. The attending physician at Frazier wrote a specific order that the staff should exercise seizure precautions while housing and treating plaintiff. It was foreseeable, based upon past experience known to defendant, that plaintiff might have another seizure while at Frazier.

Evidence was also introduced tending to establish that the cell in which plaintiff was housed while at Frazier was not sufficiently safe to guard against foreseeable injury to plaintiff should he experience a seizure. Plaintiff testified that the injury to his eye occurred when he fell while experiencing a seizure and struck his eye on the sharp corner of a metal plumbing inspection plate which had been bent and was protruding out from the wall of his cell. Defendant countered plaintiff's contention with the testimony of a prison nurse, who stated that plaintiff had told him that he hit his eye on the corner of his bed However, there was no bed in the cell. This same prison nurse also testified that Frazier's standard procedures for the care of seizure patients were not followed in plaintiff's case.

In summary, defendant did owe the common-law duty of care to plaintiff. Plaintiff's injuries are compensable if they were received as a foreseeable consequence of the breach of this duty. If plaintiff's testimony that he injured his eye as a result of falling during a seizure and striking his eye on the protruding metal plate is found to be credible, plaintiff has proved his negligence claim entitling him to damages for his eye injury.

Defendant contends that plaintiff waived his negligence claim by failing to advance it at, or prior to, trial. Our reading of the entire record shows this contention to be without merit. Plaintiff's complaint, at paragraph six, seven and eight, when liberally construed, sounds in simple negligence. Plaintiff's counsel in both opening and closing arguments, as well as his pretrial and post-trial briefs, characterizes the action as a negligence and not a medical malpractice case. Plaintiff introduced testimony at trial to conform to his negligence claim. It was defendant and not plaintiff that repeatedly characterized this as a medical malpractice action. In our opinion, plaintiff has sufficiently advanced a case sounding in negligence to warrant a determination by the trial court.

Plaintiff's second assignment of error is sustained.

Plaintiff's assignments of error are sustained. The judgment of the trial court is reversed and the case is remanded to the Ohio Court of Claims for a determination of defendant's liability, if any, for ordinary negligence in a manner consistent with this opinion.

*Judgment reversed and case remanded.*

WHITESIDE and WINKLER, JJ., Concur.

WINKLER, J., of the Hamilton County Common Pleas court, sitting by assignment in the Tenth Appellate District.